IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AUTO-OWNERS INSURANCE           )
COMPANY, *et al.*,              )
                                )
        Plaintiffs,             )
                                )
v.                              )    Civil Action No. 3:09CV134-HEH
                                )
DONALD W. WATERS, *et al.*,     )
                                )
        Defendants.             )

## MEMORANDUM OPINION
### (Granting Defendants' Echostar and Dish Network's Motion to Stay and Granting Doe Defendants' Motion to Stay)

This is a declaratory judgment action brought by Auto-Owners Insurance

Company ("Auto-Owners") and Owners Insurance Company ("Owners') against Donald

W. Waters ("Waters"), Rocking "R" International, Inc. ("Rocking R"), Echostar Satellite,

LLC ("Echostar"), Dish Network Services, LLC ("Dish Network"), Infant Doe, and Jane

and John Doe (collectively as "Doe Defendants"). It is presently before the Court on

Defendants' Echostar and Dish Network's Motion to Stay (Dk. No. 54), filed on

September 11, 2009, and Doe Defendants' Motion to Stay All Proceedings (Dk. No. 67),

filed on September 25, 2009. The Court will dispense with oral argument because the

facts and legal contentions are adequately presented in the materials before the Court, and

argument would not aid in the decisional process. For the reasons stated herein, the Court

will grant Defendants' Echostar and Dish Network's Motion to Stay, and grant Doe

Defendants' Motion to Stay to All Proceedings.

## I.  BACKGROUND

Defendant Echostar is a Colorado corporation that is in the business of providing

digital direct broadcast satellite services ("Dish DBS Services") under the name of its

subsidiary Dish Network.  Echostar provides Dish Network video, audio, data, and

interactive programming services throughout the United States.  To assist in the

installation and service of Dish Network systems, Echostar authorized Rocking "R", a

Georgia based Dish Network retailer, to perform work related to the Dish DBS systems in

the Commonwealth of Virginia.

On January 7, 2005, Dish Network subscriber Jane Doe called a Dish Network

representative to report a problem with her satellite service.  After preparing a work order,

a Dish Network customer service supervisor assigned the complaint to Rocking "R" to

process and perform the selected service.  On January 16, 2005, Rocking "R" dispatched

Dish DBS Systems Technician Waters to service the Dish Network satellite television

component at the home of John and Jane Doe.[1]  Waters's assignment to the Does'

residence was pursuant to a contractual arrangement he had with Rocking "R" to service

Dish Network components.  Waters had been engaged in the installation and service of

DBS satellite dishes and receivers for Echostar, Dish Network, and Rocking "R", since

on or about October 29, 2004.

---

[1] The Doe Defendants disagree with the Plaintiffs' and Rocking "R"'s assertions that
Waters was an independent contractor working for Rocking "R".

While inside the Does' home, Waters committed an act of sexual battery against the Does' minor daughter. Unbeknownst to Rocking "R", Waters was a convicted sex offender who had been listed on the Virginia Sex Offender Registry since November 19, 1998.[2] Waters was arrested on February 5, 2005, with the assistance of Greg Ruddell, Sr. ("Ruddell"), CEO of Rocking "R".[3] Waters was convicted of aggravated sexual battery of Infant Doe on June 24, 2005, in Goochland County Circuit Court and was later sentenced on March 10, 2006. Waters is currently serving his sentence at Sussex II State Prison in Sussex, Virginia.

At the time of Waters satellite cable service visit to the Does, Rocking "R" was covered under two separate insurance policies procured through agent J. Smith Lanier & Company ("J. Smith Lanier"). First, Rocking "R" had purchased a commercial general liability policy ("Primary Policy") from Owners Insurance Company, Policy No. 044618-484413555-04, effective from August 8, 2004 through August 8, 2005. Second, Rocking "R" had purchased an umbrella policy of insurance ("Umbrella Policy") from Auto-Owners Insurance Company, Policy No. 42-927-297-01, effective from August 8, 2004 through August 8, 2005. Both the Primary Policy and the Umbrella Policy were mailed to Rocking "R" in Lincolnton, Georgia, on or about August 16, 2004.

---

[2] The Goochland County Complaint contains allegations that Waters used three different Social Security numbers when applying to Rocking "R".

[3] Ruddell was contacted by Lt. Theresa Pleasants of the Goochland County Sheriff's Office on February 3, 2005, and later agreed to assist authorities in setting up Waters capture.

On September 23, 2005, Jane Doe contacted a Dish Network service representative by telephone and informed them that a service technician had abused her child, was in jail for 20 years, and that she had retained a lawyer. Then on January 11, 2008, counsel for the Does mailed a letter and draft Complaint to Waters, Rocking "R", Dish Network, and Echostar informing them of potential litigation arising from Waters' conduct. Subsequently, the Does' filed a suit against Waters in Petersburg Circuit Court on February 19, 2008, alleging various civil torts.[4]

Upon receiving Does' draft Complaint and learning of the Waters's suit, representatives of Rocking "R" contacted J. Smith Lanier in February of 2008, and requested copies of the insurance policies that were in place on January 16, 2005.[5] Rocking "R" and J. Smith Lanier dispute the content of these various phone calls.[6] On April 16, 2008, counsel retained by "Rocking "R" sent a letter to inform both Owners and

---

[4] This February 19, 2008 action was later non-suited by the Does.

[5] Ruddell, CEO of Rocking "R", testified in his August 31, 2009 deposition that although he does not remember the specific date, after receiving the Does' draft complaint he personally called J. Smith Lanier twice asking for a copy of the policy. Several follow up calls from his staff and attorneys were also placed to Lanier.

[6] J. Smith Lanier representatives state in their depositions that Ruddell's request for copies of the insurance policies did not include specific information regarding Waters conduct on January 16, 2005, did not include the filing of a claim with J. Smith Lanier, nor did Ruddell ask J. Smith Lanier to contact Auto-Owners or Owners in regard to Waters criminal conduct on January 16, 2005. Ruddell claims he spoke with representatives of J. Smith Lanier and informed them of a potential lawsuit for millions of dollars against Rocking "R". Ruddell admits he did not contact Auto-Owners or Owners to inform them of the potential lawsuit nor did he make a claim at this time. However, he did testify that the J. Smith Lanier representative stated she would contact the insurance carriers for him.

Auto-Owners of the incident in the Does' home and of the Does draft Complaint. Owners and Auto-Owners claim Waters, Dish Network, and Echostar never informed them of Waters's assault on Does' daughter or of the civil suit filed against Waters in Petersburg Circuit Court.

On January 28, 2009, the Does filed suit against Waters, Rocking "R", Dish Network, and Echostar in Goochland Circuit Court in Virginia ("Goochland County suit"). This pending Goochland County suit alleges sexual assault and battery, assault, battery, intentional infliction of emotional distress, negligent hiring/retention, and a claim for recovery of medical expenses pursuant to Va. Code section 8.01-243(B). In response to this Goochland County suit, Auto-Owners and Owners issued various reservation of rights letters to Rocking "R", Waters, Echostar, and Dish Network.[7] In addition, Owners is currently providing Rocking "R" and Waters a defense in the Goochland County action. Owners had retained counsel to provide defenses to Echostar and Dish Network but those defendants rejected the retained counsel and have proceed with their own.

In turn, Auto-Owners and Owners filed a Complaint for Declaratory Judgment (Dk. No. 1) in this Court on March 9, 2009, to adjudicate disputes over the existence of insurance coverage for the damage claims made by the Does against the defendants in the Goochland County suit. The Plaintiffs assert that Rocking "R", Waters, Echostar, and

---

[7] Auto-Owners and Owners issued reservation of rights letters to Rocking "R" on May 15, 2008 and May 23, 2008, to Waters on October 28, 2008 and November 3, 2008, and to Echostar and Dish Network on February 16, 2008.

Dish Network breached the notice provisions of both insurance policies, that their actions were not "occurrences" under the policies, that their actions were excluded under the policy language, and that certain Defendants do not qualify as insureds under the policies.[8] Additionally, the Plaintiffs assert that the Defendants are not entitled to choose their own counsel and that they have no duty to defend or indemnify any of the Defendants in the Goochland County suit. Defendant Rocking "R" filed an individual Counterclaim (Dk. No. 16) and Defendants' Echostar and Dish Network filed a joint Counterclaim (Dk. No. 22) on May 8, 2009. In this opinion, the Court will address Defendants' Echostar, Dish Network, and the Doe Defendants' Motions to Stay.

## II. ANALYSIS

### A. Standard of Review

Defendants Echostar, Dish Network, and the Does filed motions requesting a stay of all proceedings until a final resolution is obtained in the underlying Goochland County action. Defendants rely on the principle that a federal court should refrain from proceeding on a declaratory judgment action when a parallel state action is pending. For obvious reasons, a federal court that "charge[s] headlong into the middle of a controversy already the subject of state court litigation risks 'gratuitous interference with the orderly and comprehensive disposition of [the] state court litigation.'" *Mitcheson v. Harris*, 955

---

[8] According to Owners, Waters does not qualify as an insured under the Primary Policy. Whereas, according to Auto-Owners, Waters, Echostar, and Dish Network do not qualify as insureds under the Umbrella Policy.

F.2d 235, 239 (4th Cir. 1992).

In dealing with declaratory judgment actions, a district court has broad discretion when deciding whether to exercise jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). A declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). "At the same time, whenever a parallel proceeding is pending in state court, district courts must also take into account 'considerations of federalism, efficiency, and comity.'" *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994). Specifically, the Fourth Circuit has articulated four factors a district court should consider when deciding whether to proceed with a declaratory judgment action when a parallel state court action is pending:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts; and (4) whether the federal action is mere 'procedural fencing,' in the sense that the action is merely the product of forum shopping.

*Id.* at 377.

Applying these guidelines to the pending case, a declaratory judgment action would at some point "serve a useful purpose" in settling the disputed rights under the

7

policy and "afford relief" from the uncertainty of whether coverage exists. "It is well established that a declaration of parties rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Insurance Company v. Kapillof*, 155 F.3d 488, 494 (4th Cir. 1998). Still, "considerations of federalism, efficiency, and comity" are apparent in this case. By analyzing the four "*Nautilus*" considerations individually, this court will grant the motions to stay the proceedings as requested by Echostar, Dish Network, and the Doe Defendants.

**B.    "Nautilus" Factors**

    1.    <u>Whether the State Has a Strong Interest in Having the Issues Decided In Its Courts</u>

When assessing whether a state has a strong interest in having issues decided in its courts, federal courts must take into consideration the fact that "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case." *Mitcheson*, 955 F.2d at 237. Although this deference to the states is not absolute, in declaratory actions, "Congress has afforded the federal courts a freedom not present in ordinary diversity suits to consider the state interest in having the state courts determine questions of state law." *Id.* at 238. In assessing a particular state's interest in deciding a case, the Fourth Circuit has looked to whether all the questions in the declaratory action depend solely upon state law, the complexity of the state law issues, whether the conduct at issue in the suit involves and concerns the state, and whether the state law issues were

8

close, difficult, and problematic. *Id.* at 238; *Myles Lumber Co. v. CNA Financial Corp.,* 233 F.3d 821, 824 (4th Cir. 2000); *New Wellington Financial Corp. v. Flagship Resort Development Corp.,* 416 F.3d 290, 297 (4th Cir. 2005); *Nautilus Ins. Co.,* 15 F.3d at 378 (quoting *Mitcheson,* 955 F.2d at 236-40).

In this case, there is only a minimal state interest in having Virginia courts decide any of the material issues at hand. Since the underlying action in Goochland County involves intentional tort and negligence claims -and not any questions of insurance coverage- this consideration does not favor the stay requests. Moreover, it is clear (at least in regard to Rocking "R") that Georgia rather than Virginia law applies to all issues regarding the interpretation of the insurance contract.[9]

2.    Whether the State Courts Could Resolve the Issues More Efficiently than the Federal Courts

The second factor to consider in assessing the viability of the Defendants Motions to Stay involves the matter of efficiency. "In evaluating these efficiency concerns, the

---

[9] Undisputedly, Georgia law is the primary choice of law for all issues regarding the interpretation of the insurance policy for Rocking "R" because their business was located in Georgia, their agent was located in Georgia, and the insurance policies were delivered to them in Georgia. This determination was made because under the Virginia rule of "lex loci contractus," the law of the place where a contract was executed applies to construe its terms. *Erie Insurance Exchange v. Shapiro,* 248 Va. 638, 450 S.E.2d 144 (1944). A contract is made when the last act to complete it is performed; in the context of an insurance policy, the last act is the delivery of the policy to the insured. *Admiral Ins. Co. v. G4S Youth Services,* No. 3:07-CV-656, 2009 WL 1617952 (E.D. Va. Jun. 9, 2009); *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.,* 377 F.3d 408, 419 (4th Cir. 2004) (citing *Buchanan v. Doe,* 431 S.E.2d 289, 291 (Va. 1993) (noting that "generally, the law of the place where an insurance contract is written and delivered controls issues as to its coverage.")).

Supreme Court has directed [Courts] to focus primarily on 'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s]' that are already pending in the state courts." *Great Amer. Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006) (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)). "This in turn requires careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." *Id.*

In considering this second factor, while the Virginia state court could resolve the insurance coverage issues, it is doubtful they could do so more efficiently. As an initial matter, the claims before this Court are for totally separate causes of action than those currently pending in state court. Additionally, Plaintiffs in this declaratory judgment matter are not parties in the underlying Goochland County suit and there is no evidence that the Plaintiffs are amenable to process in that jurisdiction. For these reasons, this factor tips against staying the case.

3.    Whether the Presence Of 'Overlapping Issues of Fact or Law' Might Create Unnecessary 'Entanglement' Between the State and Federal Courts

The third factor for consideration in determining the appropriateness of granting the Defendants' motions to stay is the presence of overlapping issues that create unnecessary entanglement between state and federal courts. The importance of this factor

10

rests in the fact that "if the federal court reached final judgment before the state court, its resolution of those common issues might be entitled to preclusive effect in the state action." *Nautilus Ins. Co.,* 15 F.3d at 377. In doing so, this "would 'frustrate the orderly progress' of [the] state court proceedings by leaving the state court with some parts of [the] case foreclosed from further examination but still other parts in need of full scale resolution." *Id.* (quoting *Mitcheson,* 955 F.2d at 239-40).

Using this line of reasoning, there is a clear potential for entanglement between the immediate declaratory judgment action and the underlying tort/negligence case in Goochland County. First and foremost, this Court must decide the issue of whether Waters was an independent contractor or an employee in order to determine if coverage exists. Under the insurance policies, questions involving notice violations, the imputation of Waters's intentional acts, the exclusion of coverage, and who qualifies as an insured are contingent upon a determination of Waters's employment status and the scope of his employment. Without resolving these factual issues, this Court could not adequately address major issues presented in the declaratory judgment action.

The second area of potential entanglement between this Court and the Goochland Court are the coverage issues dependent upon what constitutes an "occurrence" under the policy. These issues, which can only be decided by analyzing the intentional acts of Waters, and the hiring decisions of Rocking "R", Echostar, and Dish Network, could have a preclusive effect on the underlying state case. Therefore, it appears any decision by this

11

Court on specific acts of the Defendants could frustrate the "orderly progress" of the Goochland Court proceedings.

The last entanglement concerns discovery. With no amount of discovery pertaining to the circumstance or scope of Waters's employment, the parties in the immediate case would be unprepared to fully address these issues, regardless of whether this Court agreed to hear them or not. The Doe Defendants claim that discovery is ongoing in the underlying state case but that Rocking "R", Dish Network, and Echostar have refused to respond to certain discovery requests (concerning Waters's employment). This potential procedural entanglement could interfere with a vital aspect of the state case and could frustrate the state courts discovery orders. Due to the different discovery rules set forth in federal and state court, any involvement in discovery by this Court would entangle it with the state proceeding.

4.    Whether the Federal Action is Mere 'Procedural Fencing,' In the Sense that the Action is Merely the Product of Forum Shopping

The fourth factor we must consider to grant a stay of the proceedings focuses on whether the action before this Court is merely the product of forum shopping, i.e. "procedural fencing." This analysis will focus on whether a "party has raced to the federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Nautilus Ins. Co.*, 15 F.3d at 380. In addition, this Court must ask whether there is "any indication that this declaratory action was filed in an effort to obtain a federal forum in a case not otherwise removable." *Id.*

12

However, if "this action was filed in an entirely proper effort to obtain prompt resolution of a dispute over a liability insurers obligation to defend and indemnify its insured against certain tort claims then being pressed against it in a state court," there is likely no procedural fencing. *Id.*

Despite several indications of an effort by the Plaintiffs to obtain a peremptory decision by a federal court, there is no clear proof of procedural fencing. Consequently, this fourth consideration offers no justification to stay these proceedings.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Echostar and DISH Network's Motion to Stay All Proceedings and grant Doe Defendants' Motion to Stay. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this 19 day of Oct. 2005.
Richmond, VA

13